IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| TODD YURGIN, ) | |
| ) | |
| Movant/Defendant, ) | |
| ) | |
| v. ) | Civ. A. No. 12-458-GMS |
| ) | Cr. A. No. 10-21-GMS |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent/Plaintiff. ) | |

**MEMORANDUM OPINION**

---

Todd Yurgin. *Pro se* movant.

Robert Kravetz. Assistant United States Attorney, United States Department of Justice, Wilmington, Delaware. Attorney for respondent.

---

Feb 19, 2015
Wilmington, Delaware



SLEET, District Judge

## I. INTRODUCTION

Movant Todd Yurgin ("Yurgin") filed a *pro se* motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255. (D.I. 99) The government filed an answer in opposition. (D.I. 109) For the reasons discussed, the court will grant the government's motion and deny Yurgin's § 2255 motion without holding an evidentiary hearing.

## II. BACKGROUND

In February 2010, Yurgin and his co-defendant, Joseph Aughenbaugh, were indicted on eight counts stemming from a sophisticated fraud and identity theft scheme. The charges included conspiracy to commit mail fraud, wire fraud, and bank fraud, in violation of 18 U.S.C. § 371 (count one); mail fraud, in violation of mail fraud, in violation of 18 U.S.C. § 1341 (count two); social security fraud, in violation of 42 U.S.C. § 408(a)(7)(B) (counts three, four, and seven); money laundering, in violation of 18 U.S.C. § 1957 (count five): and aggravated identity theft, in violation of 18 U.S.C. § 1028A (count eight).

Yurgin was represented by his original attorney from September 2009 through the beginning of April 2010. In April 2010, the court appointed new counsel (hereinafter referred to as "plea counsel") to represent Yurgin. (D.I. 27)

On August 12, 2010, a superseding indictment added several related charges, as well as a charge of assaulting a federal agent (count sixteen). (D. I. 44) On August 30, 2010, Yurgin waived indictment and pled guilty to the following six counts of a criminal information, which consolidated certain charges and removed any reference to the alleged assault charge: (1) count one: conspiracy to commit mail fraud; (2) count two: mail fraud; (3) counts three and four: social

1

security fraud; (4) count five: money laundering; and (5) count six: aggravated identity theft. The memorandum of plea agreement provided, in relevant part:

> The defendant knows that he has, and voluntarily and expressly waives, the right to file any appeal, any collateral attack, or any other writ or motion after sentencing – including, but not limited to, an appeal under 18 U.S.C. § 3742 or 28 U.S.C. § 1291, or a motion under 28 U.S.C. § 2255 – except that the defendant reserves his right to appeal only if (1) the government appeals from the sentence, (2) the defendant's sentence exceeds the statutory maximum for the offense set forth in the United States Code, or (3) the sentence unreasonably exceeds the Sentencing Guidelines range determined by the District Court in applying the United States Sentencing Guidelines.

(D.I. 52 at ¶ 11)

During the plea colloquy, the court reviewed each paragraph and posed specific questions to Yurgin with respect to each section of the plea agreement. The court read the appellate and collateral attack waiver provision to Yurgin, confirmed that Yurgin had consulted with his attorney regarding the waiver, and discussed in detail the implications of the waiver. (D.I. 55 at 43-48) In response to the court's inquiries, Yurgin stated affirmatively that he understood the rights to be waived and that the plea agreement accurately reflected the agreement reached with the government. *Id.* at 47-55. Yurgin signed the plea agreement and the court adjudged him guilty.

In October 2010, Yurgin filed a letter motion requesting the appointment of new counsel. (D.I. 54) The court granted that motion, and new counsel (hereinafter referred to as "sentencing counsel") started representing Yurgin. Sentencing counsel filed a motion to withdraw Yurgin's guilty plea. (D.I. 67) The court denied the motion on February 3, 2011. (D.I. 83) On March 24, 2011, the court sentenced Yurgin to a total sentence of 199 months' imprisonment. Judgment was entered on March 30, 2011. (D.I. 88)

Yurgin filed a notice of appeal. The government filed a motion to enforce the appellate waiver and for summary affirmance. On July 20, 2011, the Third Circuit Court of Appeals issued an order enforcing the appellate waiver and summarily affirming this court's judgment. (D.I. 96)

Yurgin timely filed his § 2255 motion in March 2012, and then filed a supplemental opening brief. (D.I. 99; D.I. 106) After reviewing these two documents together, the court construes Yurgin's § 2255 motion as asserting the following four grounds for relief: (1) plea counsel provided ineffective assistance by coercing Yurgin to enter a guilty plea against his will, by permitting the court to involve itself in the plea proceedings, and by misleading Yurgin and providing erroneous advice; (2) sentencing counsel provided ineffective assistance by attaching an unsworn affidavit from Yurgin's co-defendant Aughenbaugh to the November 22, 2010 motion withdraw the guilty plea without requesting an evidentiary hearing to authenticate that affidavit (D.I. 67; D.I. 69; D.I. 73), by failing to make unspecified arguments regarding the proper amount of loss for relevant conduct purposes at sentencing, and by failing to inform Yurgin that the court had appointed two attorneys to represent him; (3) Yurgin did not enter his plea knowingly and intelligently because he did not possess a factual understanding of the elements of the charged offense; and (4) the court should have held an evidentiary hearing to determine Yurgin's competency despite plea counsel's request that the court deny the motion as moot. In response, the government moves for dismissal of the § 2255 motion, based on the collateral review waiver provision contained in Yurgin's plea agreement. (D.I. 109 at 5-8) Alternatively, the government contends that Yurgin's claims should be denied as meritless. (D.I. 109 at 813)

3

## III. DISCUSSION

To summarize, plea counsel represented Yurgin from April 2010 (D.I. 27) through September 2010 (D.I. 54), which included the plea negotiations and plea colloquy. Sentencing counsel represent Yurgin from October 2010 (D.I. 59) through March 28, 2011 (D.I. 87), which included the period following the entry of the plea agreement up until the first day of the sentencing hearing. Yurgin elected to represent himself during the actual sentencing hearing.

### A. Appellate/Collateral Waiver

As a general rule, courts will enforce a defendant's waiver of his appellate and collateral rights, if it is "entered knowingly and voluntarily and [its] enforcement does not work a miscarriage of justice." *United States v. Mabry*, 536 F.3d 231, 236-37 (3d Cir. 2008). The court has an affirmative and "an independent obligation to conduct an evaluation of the validity of a collateral waiver." *Id.* at 238. Specifically, the court must consider: (1) whether the waiver was knowing and voluntary; (2) whether there is an exception to the waiver which prevents its enforcement; and (3) whether enforcement of the waiver would cause a miscarriage of justice. *United States v. Goodson*, 544 F.3d 529, 536 (3d Cir. 2008).

When determining if a waiver of the right to collateral review was knowing and voluntary, the reviewing court must determine if "the district court inform[ed] the defendant of, and determine[d] that the defendant under[stood] . . . the terms of any plea agreement provision waiving the right to appeal or to collaterally attack the sentence as Federal Rule of Criminal Procedure 11(b)(1)(N) requires." *Mabry,* 536 F.3d at 239. When determining whether a miscarriage of justice would occur if the waiver were enforced, there is no specific list of circumstances that would constitute a miscarriage of justice. *Id.* at 242. Rather, the court must

4

apply a common sense approach and evaluate "the clarity of the error, its gravity, its character (e.g., whether it concerns a fact issue, a sentencing guideline, or a statutory maximum), the impact of the error on the defendant, the impact of correcting the error on the government and the extent to which the defendant acquiesced in the result." *Id.* at 242-43. To that end, granting an exception to a waiver based on a miscarriage of justice must be done "sparingly and without undue generosity." *United States v. Wilson*, 429 F.3d 455, 458 (3d Cir. 2005).

### 1. Voluntary and Knowing Nature of the Waiver

Having reviewed the transcript of the guilty plea hearing, as well as the parties' submissions, the court concludes that Yurgin's waiver of his appellate/collateral review rights in exchange for certain promises from the government was knowing and voluntary. As mandated by *Mabry*, the transcript of the plea hearing reflects that the court explained the specific terms of the plea agreement, and questioned Yurgin to confirm that he understood the meaning of the provisions. The court assured that Yurgin was competent, and that he had a full opportunity to discuss the agreement with plea counsel and make an informed decision. Notably, the court reviewed the waiver paragraph with Yurgin in detail, and explained the rights he was relinquishing in exchange for the deal with the government. (D.I. 55 at 44-47) The court even provided plea counsel and Yurgin additional time during the plea colloquy to discuss the waiver. (D.I. 55 at 46) This exchange clearly demonstrates that Yurgin's plea in general, and the waiver in particular, was knowing and voluntary.

The court also notes that its determination that the waiver was knowing and voluntary is based on its own assessment of Yurgin's answers and demeanor during the plea colloquy and is well-grounded in the record. The fact that the Third Circuit Court of Appeals enforced Yurgin's

5

appellate waiver and summarily affirmed this court's judgment provides additional support for this conclusion. (D.I. 96)

Nevertheless, Yurgin asserts that his plea was not knowing and voluntary because he did not understand the elements of the offense charged.[1] This conclusory allegation is unsupported by the record or any other evidence and, therefore, cannot relieve Yurgin of his plea agreement or the waiver it contains. *See Palmer v. Hendricks*, 592 F.3d 386, 395 (3d Cir. 2010). For instance, during the plea colloquy, Yurgin admitted that he was satisfied with plea counsel's representation, advice and service. (D.I. 55 at 35-36) The record also shows that Yurgin was informed of and understood the nature of the charges set forth in the Information, and that he understood the elements that the government was required to prove if his case proceeded to trial. (D.I. 55 at 35, 39-42, 52-54) The government also summarized the factual basis for each of the offenses charged in the Information, and Yurgin stated that he agreed to and admitted those facts. (D.I. 55 at 55-60) Finally, Yurgin admitted that he had reviewed the guilty plea memorandum before signing it, and then he pled guilty to the Information. (D.I. 55 at 36-37, 60) Given this record, the court concludes that Yurgin has failed to demonstrate that his plea agreement in general, and his appellate/collateral waiver in particular, were not knowing and voluntary.

### 2. Scope of the Waiver

The next question is whether the four claims in Yurgin's § 2255 motion fall into any of the exceptions to the waiver. They do not. The government did not appeal the sentence, and Yurgin does not challenge his sentence on the ground that it exceeds the statutory limits or unreasonably exceeds the sentencing guideline range determined by the court in applying the

---

[1]Yurgin also contends that his guilty plea was involuntary because plea counsel coerced him to enter it. The court addresses this contention in its discussion of Yurgin's first claim of ineffective assistance of counsel. *See infra* at 9-11.

6

sentencing guidelines. Therefore, Yurgin's four grounds for relief cannot prevent the enforcement of the waiver.

### 3. Miscarriage of Justice

Finally, the court must determine if enforcing the waiver will result in a miscarriage of justice. Although the Third Circuit has refrained from identifying a specific list of circumstances to consider before invalidating a waiver for creating a miscarriage of justice, the "miscarriage of justice" exception is quite narrow. It "will be applied sparingly and without undue generosity,"[2] and only where "manifest injustice" would result by enforcing the waiver. *See United States v. Gwinnett*, 483 F.3d 200, 206 (3d Cir. 2007).

As previously noted, the record clearly reflects that Yurgin entered into the plea agreement knowingly and voluntarily. In addition, the court's total sentence of 199 months of imprisonment[3] was within the recommended sentencing guideline range,[4] was less than the statutory maximum of thirty years for count one, and did not represent an upward departure or variance from the applicable guideline range. Based on this record, the court concludes that enforcing the waiver for claims three and four will not result in a miscarriage of justice. Therefore, the court will deny claims three and four as barred by the appellate/collateral waiver.

---

[2]*United States v. Wilson*, 429 F.3d 455, 458 (3d Cir. 2005).

[3]The overall sentence term of 199 months consists of 175 months on counts one, two, and four; a concurrent term of 60 months on counts three and five; and a consecutive (mandatory) term of 24 months on count six. (D.I. 88 at 3)

[4]Yurgin's advisory Sentencing Guidelines range for counts one through five was 151-188 months which, with a mandatory consecutive sentence of 24 months for count six, resulted in an effective sentencing range of 175-212 months. *See* (Appellee's Motion to Enforce Appellate Waiver and for Summary Affirmance in *United States v. Yurgin*, No. 11-1896 (3d Cir. Apr. 12, 2011), at 3).

7

The court reaches a different conclusion with respect to Yurgin's ineffective assistance of counsel allegations contained in claims one and two. The Third Circuit has recognized that a miscarriage of justice may result by enforcing an appellate/collateral waiver where there has been ineffective assistance of counsel in connection with the negotiation of the waiver. *See United States v. Shedrick*, 493 F.3d 292, 298 (3d Cir. 2007). Additionally, in October 2014, the Department of Justice ("DOJ") issued a memorandum for all federal prosecutors stating that the DOJ will no longer ask criminal defendants who plead guilty to waive their right to bring future claims of ineffective assistance of counsel. *See* http://www.justice.gov/opa/pr/attorney-general-holder-announces-new-policy-enhance-justice-departments-commitment-suppoet (last visited January 30, 2015). The memorandum also provides that, for "cases in which a defendant's ineffective assistance claim would be barred by a previously executed waiver, prosecutors should decline to enforce the waiver when defense counsel rendered ineffective assistance resulting in prejudice or when the defendant's ineffective assistance claim raises a serious debatable issue that a court should resolve." *Id.* In light of this new policy, the court will exercise prudence and address the merits of claims one and two.

### B. Ineffective Assistance of Counsel

As a general rule, ineffective assistance of counsel claims are reviewed pursuant to the two-pronged standard established in *Strickland v. Washington,* 466 U.S. 668 (1984). Under the first ("performance") prong of the *Strickland* standard, a movant must demonstrate that "counsel's representation fell below an objective standard of reasonableness," with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance. *Strickland,* 466 U.S. at 688. Under the second ("prejudice") prong of the *Strickland*

8

standard, a movant must demonstrate a reasonable probability that, but for counsel's error, the outcome of the proceeding would have been different. *Id.* at 694; *United States v. Nahodil*, 36 F.3d 323, 326 (3d Cir. 1994). In the context of a guilty plea, a movant satisfies *Strickland*'s prejudice prong by demonstrating that, but for counsel's error, there is a reasonable probability that he would have insisted on proceeding to trial instead of pleading guilty. *See Hill v. Lockhart*, 474 U.S. 52, 58 (1985). Notably, a court can consider the prejudice prong before the deficiency prong. *United States v. McCoy*, 410 F.3d 124, 132 n.6 (3d Cir. 2005). Finally, although not insurmountable, the *Strickland* standard is highly demanding and leads to a strong presumption that counsel's representation was professionally reasonable. *Strickland,* 466 U.S. at 689.

### 1. Claim One: Ineffective Assistance of Plea Counsel

In claim one, Yurgin contends that plea counsel coerced him to enter a guilty plea by filing a motion for a competency hearing as a "tool of manipulation." (D.I. 110 at 3) Yurgin appears to believe that the fact that plea counsel withdrew the motion for a competency hearing after Yurgin agreed to enter a guilty plea supports his coercion argument.[5] *Id.* For the following reasons, the court concludes that this argument is unavailing.

First, the court already rejected a similar argument regarding plea counsel's coercion when it denied Yurgin's motion to withdraw his guilty plea, holding that, "even if the court were to accept arguendo [Yurgin's] allegations of [plea counsel's] lies, manipulation, and deceit, [] the

---

[5]To the extent Yurgin also contends that plea counsel provided ineffective assistance by improperly withdrawing the motion for a competency hearing, the argument does not warrant relief. Significantly, because Yurgin does not allege that there was any reason to question his competency, he cannot demonstrate that he was prejudiced by plea counsel's action. Moreover, the guilty plea transcript and Yurgin's subsequent communications with the court demonstrate that Yurgin understood the process.

9

court is far from persuaded that Yurgin's guilty plea was the result of deceit or coercion." (D.I. 83 at 10) Notably, Yurgin has not advanced any new allegations of coercion that were not addressed in the court's earlier decision.

Second, Yurgin's claim of coercion is belied by his statements under oath on the record. *See Blackledge v. Allison*, 431 U.S. 63, 74 (1977)("[s]olemn declarations in open court carry a strong presumption of verity" creating a "formidable barrier in any subsequent collateral proceedings."). For instance, the transcript of the plea colloquy demonstrates that Yurgin responded "no" when the court asked if anybody promised him something different from the promise contained in the memorandum of plea agreement. (D.I. 55 at 38) Yurgin also responded "no" when the court asked if anybody forced him to plead guilty. *Id.* Finally, Yurgin responded "yes" when the court asked Yurgin if he was pleading guilty of his own free will because he was guilty of the offenses outlined in the information. (D.I. 55 at 39) In sum, Yurgin's unsupported allegation regarding plea counsel's alleged coercive action of filing a motion for a competency hearing fails to provide compelling evidence as to why the statements he made during the plea colloquy should not be presumptively accepted as true.

Third, the transcript of the plea colloquy reveals that Yurgin's initial hesitation in signing the plea agreement had to do with a reference to an assault charge and his belief that any such charge, even if dismissed, would affect his security classification in the Bureau of Prisons; nothing in the plea colloquy transcript even remotely suggests that Yurgin's hesitation stemmed from plea counsel's actions. (D.I. 55 at 5, 21-25) Once the government removed all references to the assault charge from the information and plea agreement, Yurgin willingly entered the plea colloquy and signed the plea agreement. Notably, even in the letter motion to dismiss plea

10

counsel that Yurgin filed after pleading guilty, Yurgin explicitly asserted his continued desire to enter a guilty plea:

> At the same time I would like to try and keep the plea deal as long as it is what was agreed to in court on 8.30.10 with no reference to the alleged assault. (I am afraid that if the deal is completely cancelled that the Assistant District Attorney will come back again to supersede me with more of the aggravated identity theft charges which carry minimum mandatories of 2 years for each count).

(D.I. 54 at 2)

For all of these reasons, Yurgin cannot demonstrate that he would not have entered a guilty plea but for plea counsel's allegedly coercive act of filing a motion for a competency hearing (or any other unspecified coercive behavior). Accordingly, the court will deny this portion of claim one as meritless.

Yurgin's additional contentions that plea counsel was ineffective for permitting the court to involve itself in the plea proceedings, for misleading Yurgin, and for providing erroneous advice, are similarly unavailing. The guilty plea transcript demonstrates that the court was extremely careful not to impact the plea negotiations in any respect. (D.I. 55 at 15-18, 23-25) In turn, although Yurgin describes his dissatisfaction with plea counsel's attitude toward him during the plea negotiation stage in an eight page "affidavit" attached to his supplemental brief (D.I. 106 at 7-15), his rambling retrospective essay does not explain how plea counsel misled him or identify counsel's alleged "erroneous advice." As such, these bare allegations are insufficient to establish prejudice. *See Parry v. Rosemeyer*, 64 F.3d 110, 118 (3d Cir. 1995).

Accordingly, the court will deny claim one in its entirety as meritless.

## 2. Claim Two: Ineffective Assistance of Sentencing Counsel

In claim two, Yurgin contends that sentencing counsel provided ineffective assistance by: (a) including an unsworn affidavit from Yurgin's co-defendant Aughenbaugh as an exhibit to the November 22, 2010 motion to withdraw the guilty plea, and by failing to request a hearing to establish the authenticity of said affidavit (D.I. 67; D.I. 69; D.I. 73; D.I. 106 at 2); (b) failing to make unspecified arguments regarding the proper amount of loss for relevant conduct purposes at sentencing; and (c) failing to inform Yurgin that the court had appointed two attorneys to represent him. These assertions do not warrant relief.

### a. Aughenbaugh's unsworn affidavit

According to Third Circuit precedent, a defendant seeking to withdraw a guilty plea must offer "credible facts in support of his claim" of innocence, *United States v. Jones*, 336 F.3d 245, 252 (3d Cir. 2003), that is, "facts in the record that support a claimed defense." *United States v. Brown*, 250 F.3d 811, 818 (3d Cir. 2001). A defendant must also to provide sufficient reasons for having taken contradictory positions at his change of plea hearing. *See Jones*, 336 F.3d at 252-53.

Here, Yurgin contends that sentencing counsel was ineffective for attaching an unsworn affidavit from Aughenbaugh to the motion to withdraw the guilty plea and for failing to request a hearing to establish the authenticity of that affidavit. This argument is unavailing, because Yurgin cannot demonstrate sufficient prejudice under *Strickland*. Notably, the court did not deny Yurgin's motion to withdraw the guilty plea solely because Aughenbaugh's affidavit was not sworn to. Rather, the court denied the motion because neither the motion itself nor its attachments satisfied Yurgin's burden to provide factual support and a convincing reason for his

12

blanket assertions of innocence. For instance, nothing in Yurgin's motion attempted to rebut the detailed factual record of his guilt developed in this case, such as: (a) the facts regarding his participation in the fraud and identity theft scheme which he agreed to during the change of plea hearing (D.I. 55 at 55-60); and (b) the statements he made to Postal Inspector Juanita Waters in a proffer statement professing his guilt. (D.I. 75 at Ex. C)

And, whether or not it was sworn to, Aughenbaugh's affidavit was equally flawed. Significantly, the affidavit was dated November 23, 2010, which was one day after the court sentenced Aughenbaugh to 145 years of incarceration. During Aughenbaugh's sentencing hearing, Aughenbaugh's defense counsel alluded to Yurgin's attempts to manipulate Aughenbaugh into filing an "affidavit" on his behalf:

> Furthermore, I know that his co-defendant, Mr. Yurgin, who has been like very, very close with him and he took Mr. Yurgin, you know, under him, he has tried incessantly, Mr. Aughenbaugh, to have him plead guilty. Every time when Mr. Yurgin would say I am not going to plead guilty and he wrote to Mr. Aughenbaugh, Mr. Aughenbaugh told him, you know, you must plead guilty.
>
> And the latest thing is that Mr. Yurgin has asked Mr. Aughenbaugh to provide an affidavit that he is innocent of the charges, and Mr. Aughenbaugh has refused to do that.
>
> I have told him that again Mr. Yurgin wishes to withdraw his guilty plea today, as he is set for sentencing. And Mr. Aughenbaugh said he saw him briefly downstairs, and just said you are out of your mind. Don't do that. You are going to hurt yourself. You are going to lose your three points for acceptance of responsibility. You are not going to get a trial anyway.
>
> So I think he has done that really to help Mr. Yurgin, not to further his own interests. He has told me, if he has to, he will cooperate with the government, if a trial should be granted. Although he doesn't really relish the thought of doing that. But he said he is just really annoyed with the way Mr. Yurgin has gone.

(D.I. 81 at 25-26)

13

Significantly, Aughenbaugh's affidavit failed to provide factual support for its assertion of Yurgin's innocence and failed to explain the discrepancy between the affidavit's assertion of Yurgin's innocence and Aughenbaugh's position at his plea and sentencing hearings. As such, even if Aughenbaugh had "sworn to" the affidavit, it would have failed to satisfy Yurgin's substantial burden of establishing valid grounds for withdrawing his plea. For this reason, the court cannot conclude that sentencing counsel was ineffective for attaching the unsworn affidavit as an exhibit to the motion to withdraw the guilty plea.

In turn, the court concludes that sentencing counsel's failure to request an evidentiary hearing to authenticate the affidavit did not amount to ineffective assistance because Yurgin cannot demonstrate a reasonable probability that the court would have granted the motion to withdraw the guilty plea but for that failure. On December 16, 2010, Aughenbaugh's defense counsel filed a letter with the court explaining that the Aughenbaugh's "affidavit" filed by Yurgin on December 13, 2010 was, in fact, false. (D.I. 74 in 10cr21-GMS-1) The letter explained that Aughenbaugh only provided the "affidavit" to Yurgin to keep Yurgin from continually badgering him, and Aughenbaugh believed that Yurgin would only show the letter to his current counsel – he was not aware that Yurgin planned to disclose the "affidavit" to the court. The letter also asserted that, if called to testify, Aughenbaugh would: (1) state that the affidavit is false; (2) explain why he prepared it; and (3) "describe in detail Mr. Yurgin's role in the conspiracy." *Id.* at 2.

Moreover, as explained in the government's March 16, 2011 letter to the court requesting that the court deny Yurgin sentencing credit for acceptance of responsibility, Aughenbaugh sent several emails to Yurgin's sister from August 2010 through October 2010 discussing how

14

Yurgin had been pressuring him to file a false affidavit with the court setting forth Yurgin's purported innocence. (D.I. 85 at 2 -9) It is very likely that these emails would have been revealed during an evidentiary hearing on Aughenbaugh's affidavit.

Thus, when viewed in context with the information that came to light after Aughenbaugh provided the affidavit, and given the negative effect this background information would have had on Yurgin's credibility, sentencing counsel's "failure" to request an evidentiary hearing on the affidavit was both objectively reasonable and cannot be said to have prejudiced Yurgin.

Accordingly, the court will deny this first allegation of claim two as meritless.

### b. Failure to present unspecified arguments regarding the proper amount of loss for relevant conduct purposes at sentencing

Next, Yurgin contends that he had an issue with sentencing counsel's "representation on several loss amount issues," because "several large amounts were double counted and some amounts were reported and recorded as used or taken and then held by the same bank (JP Morgan Chase) in a different account." (D.I 110 at 2) The record shows that sentencing counsel raised a valid objection to the loss amount. (D.I. 109, Exh. F; D.I. 65 at 14) The government and the Probation Office agreed with sentencing counsel's objection, (D.I. 65 at 14 n. 7), which resulted in the court ultimately finding that the loss amount was under $1,000,000. (D.I. 88) Given this record, and Yurgin's failure to identify any alleged additional errors, the court will deny this allegation of claim two as conclusory and unsupported.

### c. Failure to inform Yurgin that two attorneys were appointed to represent him

Finally, Yurgin contends that sentencing counsel erred in failing to inform him that, in 2009, the Federal Public Defender's Office was appointed to represent him along with another

15

attorney. The record belies Yurgin's assertion that the Federal Public Defender's Office was appointed counsel. A docket entry on September 1, 2009, states:

> Minute Entry for proceedings held before Judge Leonard P. Stark – Initial Appearance as to Todd Yurgin held on 9/1/2009; Deft. was present with counsel (**FPD was not appointed**); Govt. filed a Motion For A Detention Hearing; GRANTED; Deft. Ordered Detained pending a Preliminary and Detention Hearing to be held on 9/3/09 at 9:00 a.m. (ksr) [1:09-mj-00098](Entered 9/02/2009)

Thus, because the Federal Public Defender's Office was never appointed to represent Yurgin, it necessarily follows that sentencing counsel was not ineffective for failing to (incorrectly) inform him that he had two attorneys. Similarly, Yurgin cannot demonstrate that his sentencing hearing was impacted by the absence of a "second" attorney who, in fact, never represented him in this proceeding.

Accordingly, the court will deny claim two in its entirety.

## IV. EVIDENTIARY HEARING

A district court is not required to hold an evidentiary hearing on a motion filed pursuant to 28 U.S.C. § 2255 if the "motion and the files and records of the case conclusively show" that the movant is not entitled to relief. 28 U.S.C. § 2255; *see also United States v. Booth*, 432 F.3d 542, 545-46 (3d Cir. 2005); *United States v. McCoy*, 410 F.3d 124, 131 (3d Cir. 2005); Rule 8(a), 28 U.S.C. foll. § 2255. The record conclusively demonstrates that Yurgin is not entitled to relief under § 2255. Therefore, the court concludes that an evidentiary hearing is not warranted.

## V. CERTIFICATE OF APPEALABILITY

A district court issuing a final order denying a § 2255 motion must also decide whether to issue a certificate of appealability. *See* 3d Cir. L.A.R. 22.2 (2011). A certificate of appealability is appropriate only if the movant "has made a substantial showing of the denial of a

constitutional right." 28 U.S.C. § 2253(c)(2). The movant must "demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000).

The court has concluded that claims three and four of Yurgin's § 2255 motion are barred by the plea agreement's waiver provision, and that claims one and two lack merit. The court is persuaded that reasonable jurists would not find this assessment debatable. Therefore, the court will not issue a certificate of appealability.

## VI. CONCLUSION

The court concludes that Yurgin is not entitled to relief pursuant to 28 U.S.C. § 2255. An appropriate order will issue.